UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BALDWIN & BALDWIN, LLP. | § | |
| | § | |
| VS. | § | CAUSE NO. 2:07CV022 (TJW) |
| | § | |
| MOTLEY RICE, LLC; JOSEPH F. | § | |
| RICE; NESS, MOTLEY, LOADHOLT, | § | |
| RICHARDSON & POOLE, P.A.; NESS, | § | |
| MOTLEY, LOADHOLT, | § | |
| RICHARDSON, POOLE, LLC; | § | |
| AND MRRM, P.A. | § | |

**DEFENDANT'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S
SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes **Defendant, MRRM, P.A., ("MRRM"), formerly known as Ness, Motley, Loadholt, Richardson & Poole, Professional Association" ("NMLR&P")** and files its Answer and Counterclaims to the Second Amended Complaint on behalf of itself and the redundantly named NMLRP, preserving all rights previously asserted in motions under advisement by the Court, denying all allegations not explicitly admitted herein, and seeking equitable relief, declaratory judgment and monetary damages as set forth herein below. Additionally MRRM asserts that the appearance of additional parties in the caption of this case includes both the correct and incorrect names of the entities being sued. Specifically, (i) Motley Rice LLC is also incorrectly identified as Motley Rice, L.L.C.; (ii) Ness, Motley, Loadholt, Richardson & Poole, Professional Association is also incorrectly identified as Ness, Motley, Loadholt, Richardson & Poole, P.A.; (iii) Ness, Motley, Loadholt, Richardson & Poole, L.L.C. is incorrectly identified as both Ness,

Motley, Loadholt, Richardson, Poole, L.L.C. and Ness, Motley, Loadholt, Richardson & Poole, LLC. Answering the allegations, MRRM states as follows:

1. MRRM admits, on information and belief, the allegations of paragraph 1.

2. Responding to paragraph 2, MRRM declines to respond to the allegations directed at Motley Rice LLC other than to deny that the within action arises exclusively out of disputes involving agreements entered into between Motley Rice and Plaintiff ("the Baldwin firm"). It affirmatively alleges that any fee and work-sharing agreements relating to the Murphy/Webb cases and the Northern District cases were originally between Plaintiff and NMLR&P, now MRRM, and applied only to cases filed in Texas that are identified as the Murphy/Webb, Northern District, and the Archondakis cases.

3. Responding to the allegations of paragraph 3, MRRM declines to respond to the allegations directed at Joseph F. Rice except to affirmatively allege (i) that he neither maintains a regular place of business nor has a designated agent for service in Texas, (ii) that he is not engaged in the business of the practice of law in Texas, and (iii) that Plaintiff's allegations against Mr. Rice in an individual capacity are frivolous and should be dismissed in that any actions he has taken with respect to the matters in dispute have been solely in his capacity as an agent of either the MRRM or Motley Rice law firms. Further answering the allegations, MRRM admits that Mr. Rice has been served, that he attended a mediation in Texas by agreement. It denies that Mr. Rice has personally appeared before this court. Additionally, MRRM would direct the court's attention to the pending Rule 12(b)(2) motion filed March 9, 2007 asserting that this matter should be dismissed as to Mr. Rice for lack of personal jurisdiction.

4. Responding to the allegations of paragraph 4, MRRM admits that it neither maintains a place of business nor has an agent for service in Texas and that it may be served at 28 Bridgeside Blvd., Mt. Pleasant, SC through its agent Joe Rice. It declines to respond to allegations relating to the application of Texas statutes as constituting conclusions of law to which it is not required to respond. It affirmatively alleges that the firm formerly known as NMLR&P is no longer engaged in the active practice of law and is now legally named "MRRM, P.A." MRRM denies doing business or practicing law in Texas. It affirmatively alleges that any fee and work-sharing agreements relating to the Murphy/Webb cases and the Northern District cases were originally between Plaintiff and NMLR&P, now known as MRRM and applied only to cases filed in Texas that are identified as the Murphy/Webb, Northern District cases, and the Archondakis cases. It admits that it has been served and denies the remaining allegations.

5. MRRM denies the allegations contained in paragraph 5 and affirmatively alleges (i) that Ness, Motley, Loadholt, Richardson & Poole, L.L.C. was dissolved, with the termination of the LLC filed with the South Carolina Secretary of State's Office on March 31, 2003, (ii) that it never entered into any contract with Plaintiff and was not involved in representing clients in Texas, and (iii) is not a proper defendant. Regardless of the alleged service of process on the dissolved entity's one-time registered agent, Ness, Motley, Loadholt, Richardson & Poole, L.L.C. does not exist and has not appeared in this action.

6. Responding to the allegations of paragraph 6, MRRM incorporates its responses to paragraph 4 above and affirmatively alleges that MRRM is no longer engaged in the active practice of law. It declines to respond to the allegations regarding

the application of Texas statutory law to the facts as constituting conclusions of law to which it is not required to respond. It denies that MRRM does business in Texas or practices law there. It admits the allegation that MRRM does not maintain a place of business or have a designated agent in Texas. It admits that it formerly had one or more agreements with Plaintiff addressing the provision of legal services in Texas and the sharing of fees for same, but denies, on information and belief, that any such agreement was entered into in Texas. It admits that Joseph F. Rice is its registered agent for service of process, and admits that it has been served. It denies the remainder.

7. MRRM declines to respond to the allegations of paragraph 7 as constituting a conclusion of law to which it is not required to respond. To the extent it is required to respond to any factual allegations, it admits that, for the most part, Plaintiff's work on any Canadian Asbestos cases was performed in Texas, but denies, on information and belief, that negotiations and fee-sharing agreements transpired exclusively there or that any "contracting" occurred exclusively there.

8. Responding to paragraph 8, MRRM admits diversity of citizenship, but affirmatively alleges that jurisdiction is proper before the United States District Court for the District of South Carolina, Charleston Division as the more convenient forum for the parties and witnesses under applicable federal law as demonstrated by the fact that the vast majority of witnesses and documents reside there.

9. MRRM admits the allegations of paragraph 9.

10. Responding to the allegations of paragraph 10, MRRM admits, as to itself, so much thereof as alleges that it (while known as NMLR&P) purposefully engaged Plaintiff to provide litigation assistance in Texas and entered into agreements for Plaintiff

to serve as local litigation counsel in Texas for certain defined groups of Canadian Asbestos cases. It admits so much as alleges that this dispute arises out of disputes as to the terms of such agreements and compliance with same by the parties. MRRM further admits, for itself, making sufficient contacts with the state of Texas as to confer personal jurisdiction in that state as to those cases referred to herein below as the "Murphy/Webb" and "Northern District" cases. It denies the remainder and demands strict proof thereof.

11. It denies the allegations of paragraph 11 and affirmatively alleges that Plaintiff has failed to comply with all conditions precedent as required in order to maintain any breach of contract claim against MRRM, as set forth herein below in more detail.

12. Responding to paragraph 12 MRRM admits that it formerly practiced law and represented Canadian clients on claims arising out of exposure to asbestos or asbestos-containing products. It denies the remaining allegations of the paragraph.

13. Responding to the allegations of paragraph 13, MRRM admits the allegations to the extent they refer to the Murphy/Webb case group. It denies that it reached agreements with Plaintiff as to "joint representation" of any cases referred to in the Second Amended Complaint as the "Canadian Asbestos Litigation". It denies the remaining allegations of paragraph 13 as they refer to it and declines to respond as relates to co-defendants.

14. Responding to the allegations of paragraph 14, MRRM admits so much thereof as alleges that it confirmed in a letter, dated September 6, 2000, an offer to pay Plaintiff 15% of the attorneys' fees on 777 of the Northern District case group. It craves reference to the letter as to its patently inadequate terms and affirmatively alleges that the

promise was gratuitous and revocable and does not constitute an enforceable contract with respect to co-counsel responsibilities or the sharing of fees from the Northern District cases. It declines to respond to allegations directed to co-defendants, but affirmatively alleges that the Baldwin firm performed no substantial legal services as to the Northern District group of cases.

15. MRRM denies the allegations of paragraph 15, except to the extent admitted in paragraph 14 above. MRRM admits that it paid a share of the Northern District fees to Plaintiff for a limited time before ceasing due to a lack of consideration by Plaintiff for a division of fees. It denies, however, a contractual obligation or ethical ability ever to pay the Baldwin firm such fees when that firm performed no corresponding legal services. It declines to respond to allegations directed to co-defendants and denies the remaining allegations of paragraph 15.

16. Responding to paragraph 16, MRRM admits so much thereof as alleges that Joe Rice, acting solely as the agent of Motley Rice, informed Plaintiff in a letter dated December 13, 2006, that it would receive no further share of fees from Motley Rice as to the Northern District case group (alternatively, the "Canadian Fort Worth Federal Court filings"), regardless of any prior fee-sharing arrangements with NMLR&P which had previously represented the clients. MRRM admits that it ceased paying fees to Plaintiff or interrupted same for reasons set forth herein above. MRRM admits that Plaintiff made inquiry regarding the status of its claimed fees. It declines to respond to allegations directed to co-defendants and denies the remaining allegations of paragraph 16.

17. Responding to the allegations contained in paragraph 17, MRRM admits a fee and work-sharing contract with Plaintiff as to the Murphy/Webb cases dating from 1988, the terms of which are set forth in a letter, which speaks for itself, and in a subsequent course of dealing. It denies that MRRM breached said contract and denies the last sentence of paragraph 17, on information and belief. It declines to respond to allegations directed to co-defendants.

18. Responding to the allegations of paragraph 18, MRRM denies that it has handled the Archondakis cases and craves reference to the letter sent by Motley Rice to the Baldwin firm on September 29, 2003, which speaks for itself. It admits, on information and belief, that Motley Rice ceased sharing fees with the Baldwin firm as to the Archondakis cases based on a failure of essential consideration by way of legal services. It denies any remaining allegations inconsistent with the terms of the referenced letter including the allegations directed at Mr. Rice individually.

**Breach of Contract**

19. In response to paragraph 19, MRRM repeats its responses to paragraphs 1-18 of the Second Amended Complaint as though restated herein verbatim.

20. It denies the allegations of paragraph 20.

21. It denies the allegations of paragraph 21.

22. It denies the allegations of paragraph 22.

23. Responding to the allegations of paragraph 23, MRRM admits so much thereof as alleges that many of the Canadian Asbestos cases transferred to Motley Rice from NMLR&P. Responding to the second sentence of the paragraph, MRRM craves reference to the previously referenced letter of December 13, 2006, which speaks for

itself, and denies that Joe Rice was ever acting in an individual capacity as to these matters.

24. MRRM denies the allegations of paragraph 24, and affirmatively alleges that the Plaintiff cannot, as a matter of law, rely to its detriment on fee-sharing agreements as to which it does not provide corresponding legal services.

## Accounting

25. In response to paragraph 25, MRRM repeats its responses to paragraphs 1-24 of the Second Amended Complaint as though re-stated herein verbatim.

26. It denies the allegations of paragraph 26.

27. It denies the allegations of paragraph 27.

28. It denies the allegations of paragraph 28 and affirmatively alleges, on information and belief, that Motley Rice has already provided ample accounting information to Plaintiff.

29. This Defendant denies the allegations contained in paragraph 29 and affirmatively alleges that no accounting which divulges confidential client information and proprietary law firm information is legally or equitably appropriate until the parties' respective contract rights have been established.

VI.

## JOSEPH F. RICE

30. Responding to paragraph 31, MRRM repeats its responses to paragraphs 1—29 of the Second Amended Complaint. It admits that Mr. Rice has served in various management capacities at MRRM and Motley Rice, but denies the remainder and

affirmatively alleges that Plaintiff's allegations against Joe Rice in an individual capacity are frivolous and in bad faith.

## VII.

31. Answering paragraph 31, MRRM admits that it has raised various defenses to Plaintiff's claims for unearned fees and denies the remaining allegations contained therein.

## VIII.

32. Answering paragraph 32 of the Second Amended Complaint, MRRM incorporates its responses as found in paragraphs 1-31 of this Answer and Counterclaim, and states that paragraph 32 states a conclusion of law, which is denied by MRRM, along with any and all other allegations contained therein.

## IX.

33. Answering paragraph 33, MRRM denies all allegations of fact and conclusions of law contained therein and affirmatively alleges that attorneys' ethical rules are relevant to issues of legality and pubic policy of contracts entered into by attorneys.

34. MRRM denies the allegations of paragraph 34, and affirmatively asserts that it is not and never has been in a fiduciary relationship with Plaintiff; further Plaintiff lacks standing to assert any claims for clients/claimants represented by Defendants in the Murphy/Webb, Northern District , Archondakis , or Worebey case and Cook cases.

## X.

**DECLARATORY JUDGMENT ACTION**

35. Answering the allegations of paragraph 35 (first) of the Second Amended Complaint, MRRM admits that an actual and justiciable controversy exists as set forth in the allegations of the Second Amended Complaint and this Answer and Counterclaim to the Second Amended Complaint.

35. Answering the allegations of paragraph 35 (second) of the Second Amended Complaint, MRRM agrees and stipulates that a declaratory judgment in which the rights and obligations of the parties as to the Murphy/Webb cases, Northern District cases, Archondakis cases, Worebey case and Cook case are determined, as set forth in paragraphs 69-70 of this Answer and Counterclaim, is appropriate and proper for a court to determine.

### Attorneys' Fees

36. Responding to paragraph 36, MRRM denies that Plaintiff is entitled to any attorneys' fees.

MRRM further denies that Plaintiff is entitled to any of the relief requested by Plaintiff in its prayer requesting relief in item numbers 1-9.

### AFFIRMATIVE DEFENSES
### Failure of Consideration

37. The transfer of the Archondakis case group to the asbestos MDL-875 in Pennsylvania resulted in a failure of essential consideration and/or lack of consideration for an ongoing fee share to Plaintiff, thus nullifying any fee-sharing agreements as to these cases to the extent no legal services are forthcoming from Plaintiff and the agreement is rendered unethical.

### Accord and Satisfaction

38. To the extent legal fees were earned by and owed to Plaintiff in accordance with contract principles, those fees have been paid, thus constituting an accord and satisfaction.

**Illegal Contract**

39. Because Plaintiff has not provided any legal services as to the Northern District case group and very limited services as to the Archondakis cases, it has not complied with ethical rules applicable to the division of attorneys' fees, thus rendering any fee-sharing agreements illegal and void as against public policy from the time when Plaintiff ceased rendering professional services proportionate to the fees it was demanding.

**Statute of Frauds**

40. Plaintiff's claims are barred in whole or in part by the statute of frauds for failure of performance within one year.

**Failure to Perform Conditions Precedent**

41. As to the Northern District and Archondakis case groups, to the extent Plaintiff had any enforceable fee-sharing contact with Defendants, Plaintiff failed to perform conditions precedent by way of legal services on the files, nor did it provide necessary consideration to support any fee-sharing contract as to the Northern District cases or the continuation of the same agreement as to the Archondakis cases.

**Statute of Limitations**

42. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

**Impossibility of Performance**

43. As a result of changes in the forum non conveniens law of Texas in the mid-1990's and the transfer of the Northern District and the Archondakis case groups from the Northern and Eastern Districts of Texas, respectively, to MDL-875 in Pennsylvania, it has become impractical or impossible for Plaintiff to perform any substantial legal services as local counsel in Texas, thus voiding any fee-sharing agreements as to those case groups.

### Vagueness as to Material Terms

44. The Northern District and Archondakis agreements, as alleged by Plaintiff, are so vague and ambiguous as to material terms as to be unenforceable as a matter of law.

### Unclean Hands

45. Plaintiff is not entitled to equitable relief due to the "clean hands" doctrine.

### Inadequate Consideration

46. No contract for the sharing of fees with the Plaintiff on the Northern District cases is enforceable due to inadequate or a complete lack of consideration for same.

### Termination at Will

47. Any fee and work-sharing agreement between these parties is terminable at will by either party so long as the clients are not prejudiced by such termination.

### COUNTERCLAIMS

48. MRRM re-alleges all of its prior allegations as though restated herein verbatim.

49. On February 23, 2002, four of six shareholders of the firm formerly known as Ness, Motley, Loadholt, Richardson & Poole, Professional Association ("NMLR&P") withdrew from that firm to form a competing law firm. On April 28, 2003, NMLR&P ceased the active practice of law and, on or about June 16, 2003, changed its name to MRRM, P.A.

50. On April 28, 2003, several attorneys formerly affiliated with NMLR&P started the new law firm of Motley Rice LLC ("Motley Rice"). With the consent of the clients, MRRM transferred to Motley Rice many of NMLRP's former clients and their cases including the Northern District and the Murphy/Webb cases.

51. Motley Rice is a South Carolina limited liability company practicing law and having its principal place of business in the County of Charleston at Mount Pleasant, South Carolina.

52. On or about 1988, NMLR&P associated the Plaintiff to work on certain asbestos personal injury cases which were filed and litigated in state court in Texas. Collectively, these cases fell into two groups which came to be known as the "Murphy" and "Webb" cases (according to their respective lead plaintiffs), and involved clients of NMLR&P consisting of the workers compensation boards of several provinces.

53. By virtue of transfer of the Murphy/Webb clients and their cases from NMLR&P in the year 2003, Motley Rice has had responsibility for legal representation of the remaining Murphy/Webb cases and has assumed responsibility for the work and fee sharing contract with the Baldwin firm.

54. On information and belief, the Baldwin firm has never had a direct contractual or attorney-client relationship with any of the clients for the representation of

the Murphy/Webb case groups, but instead has served as associated, local counsel in Texas through co-counsel arrangements with NMLR&P, as later assumed by Motley Rice.

## Northern District Cases

55. In 2000, MRRM (then known as NMLR&P) associated David Duke, a licensed Texas attorney in Ft. Worth, to assist as local counsel of record in the representation of the Northern District cases for a group of personal injury asbestos claims brought for the Canadian clients in the federal court for the Northern District of Texas. These cases were thereafter ordered by the U.S. District Court to the asbestos Multi-District Litigation ("MDL-875") in Philadelphia, Pennsylvania.

56. In September 2000, after approximately 777 Northern District cases had already been filed, Scott Baldwin, Jr. contacted an associate attorney for NMLR&P working on the Northern District case group and requested a share of the fees. The attorney gratuitously agreed to pay Plaintiff 15% of the fees on the filed Northern District cases for a non-specific contribution of legal services.

57. On information and belief, the Baldwin Firm did not perform any legal services on the Northern District cases and has received fees in the approximate amount of $73,139.76 from Defendants on those Northern District cases without rendering any corresponding legal services.

58. All Northern District cases have been transferred to MDL-875 with little prospect for remand. All legal services on behalf of the clients in the Northern District cases are currently being performed by Motley Rice and/or by attorney David Duke as Texas counsel of record.

59. The Baldwin Firm is not counsel of record for the Northern District cases and has never assumed joint responsibility for the cases.

60. Not having performed legal services, Plaintiff cannot ethically demand or share in legal fees for the Northern District cases. Moreover, any offer MRRM made to share fee with Plaintiff was gratuitous and unenforceable as lacking consideration and against public policy.

61. There has been a lack or failure of consideration as to the Northern District case group defeating any work-sharing object of the fee-sharing agreement described above. To the extent the 15% fee-sharing agreement may be determined to exist with Motley Rice by virtue of the agreement made in 2000 between Plaintiff and MRRM, the fee is unconscionable and Defendants seek rescission of same and disgorgement of all unearned fees paid to Plaintiff. Moreover, Defendants are required to cease sharing fees with Plaintiff to the extent no proportional legal services are rendered for same and/or the fee is unconscionable.

62. Motley Rice has terminated any association with Plaintiff for purposes of the Northern District case group, as there is no work for Plaintiff to perform as to the cases.

63. Some settlements have been negotiated by Motley Rice for Northern District clients with potential defendants not named as parties in the filed cases and, as to which, the Baldwin Firm has no claim for any share of a fee.

### Archondakis Cases

64. On or about September 29, 2003, Motley Rice associated the Baldwin firm to serve as local counsel on a group consisting of approximately 42 cases filed in the

United States District Court for the Eastern District of Texas on behalf of Canadian asbestos clients. These cases are known by the parties as the "Archondakis" cases.

65. As to these cases, the two firms signed a letter agreement which, *inter alia*, provided for a "50/50 fee split for all fees generated from viable defendants as of the date of filing" on the express condition that the Baldwin Firm would "share equally in the trial work", which constituted essential consideration for the fee-sharing contract. Further, Motley Rice would process bankruptcy claims "with a fee split of 80/20 as to defendants who were bankrupt at the time of filing."

66. The Baldwin firm has performed no trial work on the Archondakis cases. Other than assisting with a motion for expedited depositions, the substantive work on these cases has fallen exclusively to Motley Rice with no substantial or proportional contribution of legal services by the Baldwin firm, thus resulting in an essential failure of consideration for the fee-sharing agreement.

67. Some settlements have been negotiated by Motley Rice for the Archondakis cases with potential defendants not named as parties in the cases and, as to which, the Baldwin firm has no colorable claim to a share of fees.

68. Motley Rice has unsuccessfully sought to clarify any ambiguities as to its fee agreement with the Baldwin Firm for the Archondakis clients, including that it has no fee-sharing obligation to the Baldwin firm as to cases that are not litigated or as to recoveries from defendants not named in any complaint filed on behalf of the Archondakis clients.

**Declaratory Judgment and Equitable Remedies**

69. MRRM has an actual controversy with the Plaintiff herein and seeks to clarify, reform, and/or rescind the terms of the co-counsel, work and fee-sharing agreement with same as to the Northern District case group in order: i) to determine whether MRRM is bound by any fee-sharing agreement as to those cases; ii) to clarify ambiguities in the terms of any agreement deemed binding on MRRM; iii) to bring any such agreement into compliance with ethical requirements; and iv) to address failures of consideration and the resulting rescission or reform of agreements which are legally or equitably unenforceable and the disgorgement of unearned fees.

70. MRRM seeks judgment (i) declaring the rights and obligations of the parties as to co-counsel/fee-sharing agreements in the three groups of Canadian asbestos cases, (ii) reforming or rescinding any agreement not in conformance with the applicable Rule of Professional Conduct addressing division of fees between lawyers not in the same firm, (iii) rescinding any agreement as to which there is found to be a failure of consideration, (iv) rescinding or reforming any fee-sharing agreement found to be unconscionable, illegal, against public policy or otherwise unenforceable, and/or (v) disgorgement of unearned fees constituting unjust enrichment by Plaintiff, which should be required to repay such fees to one or more Defendant.

**Breach of Contract**

71. MRRM repeats Paragraphs 1-70 as though restated herein verbatim.

72. To the extent the Baldwin firm is deemed to have contractual co-counsel relationships with MRRM as to the Northern District cases, Plaintiff's failure to perform substantive aspects of its obligations to render legal services and provide consideration

for the contract for services constitutes a material breach of its duties to perform and renders such contract unenforceable.

73. MRRM seeks relief from any obligation to share additional legal fees with no corresponding work and seeks compensation for fees previously paid for which adequate consideration was not provided by the Baldwin firm in the way of legal services.

## Unjust Enrichment

74. MRRM repeats Paragraphs 1-73 as though re-stated herein verbatim.

75. To the extent it has been paid fees for legal services which it has not rendered the Baldwin firm has been unjustly enriched and should be required to disgorge such fees.

**WHEREFORE**, MRRM prays that the Court inquire into the facts and law alleged herein above and declare and order:

i) where there exist any enforceable contracts for fee-sharing and the rights and obligations of the parties to each;

ii) clarification of ambiguities in the terms of the co-counsel agreements, including, if need be, the striking of terms which violate public policy or are unconscionable;

iii) whether Plaintiff has rendered sufficient consideration and thus performed on contractual obligations under any fee and work-sharing agreement and, if not, the damages proximately caused to Defendant/Counter-Claimant;

iv) rescission of any fee-sharing contract as to which there has been an essential failure of consideration;

v) whether past and current fee divisions in each of the groups of cases have been and are being made in proportion to the services performed;

vi) whether the Baldwin firm has assumed joint responsibility for the representations;

vii) whether there are ethical and enforceable contracts between the parties for the division of work and the sharing of fees in each of the groups of cases;

viii) reformation of any fee-sharing contract between the parties to the extent the Court finds it to be non-compliant with applicable ethical rules, unconscionable, illegal and/or against public policy;

ix) disgorgement of prior fee payments to the Baldwin firm, to the extent the Court determines that past fee sharing on any group of cases has been unconscionable, unethical, against public policy and/or in breach of an enforceable contract between the parties;

x) dismissal with prejudice of Plaintiff's claims against this Defendant for costs and attorneys fees under Texas law with judgment rendered against Plaintiff on its claims and pre-judgment interest on actual damages rendered on Defendant/Counterclaimants' causes of action;

xi) such equitable remedies and/or actual monetary damages as are necessary to make any work and fee-sharing agreements between the parties lawful, equitable and enforceable; and

xii) such additional relief as this Honorable Court deems just and proper.

## **JURY TRIAL DEMANDED**

Defendant/Counter-claimant requests a trial by jury on all non-equitable claims.

Respectfully submitted,

**CLARK, LEA & PORTER**
P.O. Box 98
Tyler, TX 75710
(903) 593-2514 Telephone
(903) 595-1294 Facsimile


/s/ Charles H. Clark
Charles H. Clark
SBN 04274000

Gregory S. Porter
SBN 24002785

ATTORNEYS FOR DEFENDANTS

OF COUNSEL
Wm. Howell Morrison (Fed. ID 3586)
MOORE & VAN ALLEN PLLC
40 Calhoun Street; Ste. 300
Charleston, SC 29401-3535
Telephone (843) 579-7000
Email: hmorrison@mvalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served upon all counsel of record via ECF on this 19th day of September, 2007.

/s/ Charles H. Clark